WILLIAMS, Adm'r, etc., *v.* NORTH GERMAN INS. CO.[1]

SAME *v.* LONDON & PROVINCIAL INS. CO.

SAME *v.* MERCANTILE FIRE & MARINE INS. CO.

*(Circuit Court, S. D. Iowa.* June 26, 1885.)

1. FIRE INSURANCE—MISTAKE IN POLICY—NEGLIGENCE OF AGENT—REFORMATION.

   Where a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties because of the fault or negligence of the agent, it may be reformed so as to express the contract as it was intended to be made.

2. SAME—EVIDENCE—KNOWLEDGE OF AGENT.

   On examination of the evidence in this case, *held*, that the agent knew at the time what interest was intended to be insured, and that the policy should be reformed to properly show such interest.

3. SAME—OCCUPANCY OF ELEVATOR INSURED.

   Where the property insured is an elevator, and it appears, although a part of the time it was not actually used, and there was no steam up or men working there, men were around the place all the time, and the insured kept his papers there, it will not be considered that the elevator was vacant in a sense that would avoid the policy.

In Equity.

*Hagerman, McCrary & Hagerman,* for complainant.

*Anderson Bros. & Davis,* for defendant.

MILLER, Justice, *(orally.)* The plaintiff, Williams, obtained policies of insurance against the risk of fire on what is known as the "Keokuk Elevator." The policies read that the Keokuk Grain Elevator Company is insured against loss by fire to such and such amounts, and the loss, if any, is payable to Williams, administrator. C. L. Williams is and was administrator of his father's estate. At the time of this insurance—at the time it was made—the elevator property had been sold under a decree of this court, and had been bought in by Williams as administrator for the estate. He bought it in and held the certificate of purchase, liable and subject to redemption at the end of the year from the date of sale. The condition of the title, therefore, was that the legal title was in the Keokuk Grain Elevator Company, and the interest of a purchaser under a defeasible claim was in Williams as administrator of his father's estate. Before the twelve months for which the insurance was to run would expire, it was obvious that the condition of the title must be changed; either the elevator company must redeem and have a clear title to the property before the policy expired, or, failing to redeem, Williams would receive the deed and divest all rights of the elevator company. What took place was that the company did not redeem; that Williams received the deed to the property, and after he had got the deed, the elevator company being di-

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

vested of all title, the fire took place, but during the life of the policy. All lawyers know that the elevator company, having no interest in the property at the time of the fire, was not insured, and could not collect any money, and could not sustain a suit for such recovery. Nor did the clause, "Loss, if any, payable to C. L. Williams," change that legal relation. The loss mentioned in that form of policy was the loss of the Keokuk Grain Elevator Company. If this fire had taken place before the expiration of the time of redemption, the policy would have been effectual. It would have covered the loss of the elevator company. It would have been its loss. The loss would have been payable to Williams, but since the elevator company had no interest in it when the fire took place, there was no loss to it, and Williams was not insured by the policy.

Williams has filed a bill in chancery averring that the language of the policy in that respect did not represent the contract which was made. He avers that he made a contract with Maxwell, the insurance agent, to insure him and his interest in the property. He avers this with sufficient precision, and he swears to it in various forms and shapes, and other testimony is taken on the subject. The first question to be considered is whether, admitting the statements of the bill to be true, and taking for granted the testimony of Williams, it was a case for relief in chancery. I remember the old decisions in the chancery courts of England on the subject that a written contract cannot be reformed in equity for a mistake in law. That is all the branch of the subject that embarrasses me to-day. But, without examining authorities abroad, the decisions of the supreme court of the United States must govern me, and I am inclined to think that doctrine has been much narrowed in modern times. Without going to great length at the present time, I shall state it about this way: Where an instrument fails to represent what both parties intended to have it represent, and one party had drawn up the instrument, and the other party merely accepted it, and the fault was on the part of the party drawing up the instrument, it can be reformed. It would be a harsh rule if a person applying to an insurance agent, who is supposed to know the legal value of the language used in such policies, which he is drawing up every day, and who is supposed to know exactly what is desired, if that agent fails to do that which was intended, it would be harsh to say that the instrument shall not be reformed, and that chancery shall not give relief.

The testimony on that subject, although very well handled by the counsel for the companies, leaves no shadow of doubt on my mind that both parties intended to insure the interest of the administrator of his father's estate in that property. I think that every one not familiar with rules of law would say that the policies saying that loss, if any, was payable to Williams, that Williams was insured; but that is a mistake.

Williams' testimony is broad and full and clear that he communi-

cated to Maxwell the exact condition of this property as I have recited it; that there had been a decree and a sale, and that he held the certificate of sale; that it would expire during the term of the policy, and he would get the title. All these particulars he explained to Maxwell, and he told Maxwell he wanted that interest insured, and Maxwell so understood it. Williams' brother swears to the same thing. He was present, and says that the whole thing was explained to Maxwell more than once. The clerk in the office of Maxwell confirms this statement. He was present, he wrote out the policies, and he questioned Maxwell about the thing being done; doubted the sufficiency of the language; and Maxwell told him to fill it out that way; that it effected the object. When the fire took place Williams went to Maxwell and had a talk with him. Maxwell confirmed his statements in writing.

For some reason it seems Williams knew Maxwell better than some others, and he had Maxwell go before a notary public, and he made a long statement, and signed it, and swore to it in the presence of two witnesses, and the notary, and the witnesses swear that certain interlineations were made at his suggestion. And yet Maxwell, after getting to California, and under contract of re-employment, swears he never heard about this question regarding the title. I do not care to discuss such testimony. I am satisfied that the story of Williams is in the main true; that Maxwell understood the character of the title to the property; and that he was requested to provide for that state of things, and he carelessly made the policy as he did, and as it stands to-day. Some authorities are read,—something about need of absolute proof, in order to reform a legal instrument,—but I do not attach any importance to these, as I am perfectly satisfied that the contract on which this policy was executed was such as to demand the reformation of the policy. I therefore hold that it should be reformed so as to express the fact that the interest of Williams as administrator was insured.

One or two other questions are presented, and about them I have less difficulty. One of these was the provision as to leased ground; that the policy should be void unless that fact was expressed, and also if the property ceased to be occupied during the term the policy should become void, unless the company was notified and gave its consent. The bill seeks to reform the policy in both of these particulars, and asks the insertion in the policy that it was known to be on leased ground, and was to be permitted to be vacant at times. I do not think that, having reformed the policies as to the interest insured, these questions are such as need reformation. I think provisions can be waived, and the company estopped by its own transactions from asserting them. But I think it is better in these chancery cases to dispose of the whole case, if possible, and that there is no need of a jury on these questions. I am satisfied that Mr. Maxwell knew very well that this was leased ground; that his attention was called to it; and

that he made the insurance with that understanding. Therefore the company waived that part of the contract.

The lease was not from a private citizen, but from the city of Keokuk, which could not be supposed to have any interest in the burning of the property, or its destruction in any way. And this fact of the leased ground was known to the whole board of insurers.

As to the occupancy of the building, if I was a juror I should say that the property was occupied; that the elevator remained there, with its machinery, sometimes used and sometimes not used, as it had been for years. The cessation from use simply meant that no steam was up and that nobody went there to work; but men were around there all the time, and Williams went there frequently,—had his papers there; and I think that I, as a juror, notwithstanding some part of the time they were not using the elevator, would find it was not vacant. But it is claimed that Maxwell knew this, and nobody could tell when it would be vacant. Brookings had it at the time of the insurance, and I think that no juror could be justified in saying that these conditions are not waived. On the whole, then, I am satisfied that this company contracted to insure the interest of Williams in these three policies; that the language of the policies, failing to express that, should be reformed to make them express it. The other objections are not valid, and a decree should be entered for the complainant accordingly.