## HOME INS. CO. OF NEW YORK v. SULLIVAN MACHINERY CO.

### No. 751.

Circuit Court of Appeals, Tenth Circuit.
April 11, 1933.

F. A. Rittenhouse, of Oklahoma City, Okl. (John F. Webster, O. R. Rittenhouse, and R.

R. Rittenhouse, all of Oklahoma City, Okl., on the brief), for appellant.

P. C. Simons, of Enid, Okl. (L. E. McKnight, R. W. Simons, E. B. Mitchell, and L. W. McKnight,· all of Enid, Okl., on the brief), for appellee.

Before LEWIS, PHILLIPS, and McDERMOTT, Circuit Judges.

PHILLIPS, Circuit Judge.

The Sullivan Machinery, Company brought this action against the Home Insurance Company in the district court of Garfield County, Oklahoma, to reform a policy of fire insurance and to recover for a loss under the policy as reformed. ·

█ The Insurance Company duly removed the suit to the Federal Court, where it was docketed as an equity action. Thereafter the parties entered into a stipulation to the effect that the equitable and legal issues should be tried together; the equitable issues by the court and the legal issues by a jury. The action was tried in accordance with the stipulation. This procedure was irregular. The equitable issues should have been disposed of first. If an issue of law then remained, the cause should have been transferred to the law docket and disposed of as an action at law. Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232; Union Pac. R. Co. v. Syas (C. C. A. 8) 246 F. 561; Fish v. Kennamer (C. C. A. 10) 37 F.(2d) 243.

The evidence established these facts without substantial dispute. The Machinery Company was engaged in the oil well supply business. It was the owner of a·stock of oil well supply machinery located in a warehouse at Garber, Oklahoma. On December 22, 1929, the Insurance Company issued a $30,-000 policy of fire insurance on such stock for the term of one year, through its agent Taft, a local insurance agent at Garber. Failing was the state agent for the Machinery Company in charge of its business at Garber. He decided to move the stock from Garber to Enid. On April 2, 1930, when he was about ready to commence removal of the stock, he discussed the matter of insurance with Taft and informed Taft he wanted an endorsement on the policy that would cover the stock while at Garber, in transit, and at Enid. Taft stated that he would take care of the matter. Whereupon the policy was delivered to Taft. Later Taft communicated with Failing by telephone and inquired whether a ten-day removal permit would allow him sufficient time in which to move his stock. Failing replied in the negative and stated that it would take about thirty days to complete the removal.

Taft caused the following endorsement to be placed on the policy: "It is hereby understood and agreed that one-half (½) of the amount of this policy ($15,000.00) is hereby made to cover and apply on similar class of stock while located in the one story, brick, composition roof, building located on Lots 14–15, and West 4 ft. of Lot 16, Block 6, Original town of Enid, Oklahoma. All other conditions of the policy remaining the same. * * * Date of endorsement 4–2–30."

Taft returned the policy by mail to Failing. On April 11, 1930, a fire destroyed the entire stock in the warehouse at Garber. Although the policy with the endorsement attached was returned to Failing several days before the fire, he did not see or read such endorsement until after the fire. The policy required written proof of loss, signed and sworn to by the insured, to be furnished to the Insurance Company within sixty days after the fire. No such proof was furnished within that period. It was furnished later.

Taft notified the state agent of the Insurance Company at Oklahoma City that a loss had occurred under the policy, and the Insurance Company turned the matter over to the Fuller Adjustment Company, which sent its representative Smith to Garber about April 14 to adjust the loss.

The books and records of the Machinery Company were kept in an office away from the warehouse and were not affected by the fire. The Machinery Company maintained a card index inventory which was kept current by adding items of stock received and deducting items of sales. From this inventory, the Machinery Company at Smith's request furnished him a complete inventory of the stock destroyed, and the value thereof.

The stock was shipped to Failing on consignment to be sold on commission. The value was arrived at by deducting from the list price Failing's commission, and adding thereto 10 per cent. for handling and freight costs. The value thus arrived at was $28,623.-81. Smith also inspected the scene of the fire and satisfied himself there was a total loss of the stock.

After Smith had been furnished with everything requested and had examined the scene of the fire, Failing told him he could have any further information or make any examination of the records that he desired. Smith replied that he had all the information he wanted; that he did not require more;

that if there was anything else needed he would get in touch with Failing later. Smith at no time requested any further information. A question arose as to whether the policy was for $15,000 or $30,000 on the property at Garber. Smith informed Failing that the amount of coverage would have to be referred to the Insurance Company for determination. About one month after the fire, the state agent told Failing the Insurance Company took the position that its coverage was limited to $15,000, and intimated that the delay in settling the loss was due solely to the controversy over the amount of the coverage.

Crevis, vice president and treasurer of the Machinery Company, and Failing testified that the actual cash value of the property destroyed was $28,623.81. They arrived at this amount by deducting Failing's commission from the list price, which was ten per cent less than the price at which the machinery and supplies were sold to the public, and adding to the list price, less commission, ten per cent to cover freight and handling.

At the close of the evidence, the Insurance Company moved for a directed verdict in its favor. This motion was overruled. The court found that the endorsement placed on the policy was not authorized by the Machinery Company, and that it was void; and submitted the legal issues to the jury. The jury returned a verdict in favor of the Machinery Company for $27,416.07. Judgment was entered accordingly, and the Insurance Company has appealed.

■ To entitle a party to a contract to a reformation thereof on the ground of mutual mistake, he must establish such mistake by proof of "the clearest and most satisfactory character." Columbian Nat. Life Ins. Co. v. Black (C. C. A. 10) 35 F.(2d) 571, 573, 71 A. L. R. 128; Shell Petroleum Corp. v. Corn (C. C. A. 10) 54 F.(2d) 766, 769.

■ The testimony of Failing, Caldwell, and Taft clearly established an oral agreement to place an endorsement on the policy that would make it cover the stock at Garber, while in transit, and at Enid. The removal permit suggested by Taft would have effectuated that agreement, except that the ten days allowed thereby would not have given sufficient time for moving the stock. The fact that Taft suggested a removal permit, indicates he understood the agreement was to change the policy so as to cover the stock at Garber, while in transit, and at Enid. The proof measured up to the strict requirement in such cases. Taft was not, as the Insurance Company urges, acting as the dual agent of

it and the Machinery Company in making the modification of the insurance contract so as to bind both parties by the endorsement which he affixed to the policy. Taft as the agent of the Insurance Company, and Failing as the agent of the Machinery Company, agreed on a modification of the existing contract between their principals. Section 6723, C. O. S. 1921. Taft, in accordance with a fixed custom in the insurance business, agreed to prepare and attach to the policy the written evidence of that modification. Since Taft was authorized to make insurance contracts for it, the Insurance Company was bound by his oral agreement. Cooley's Briefs on Insurance (2d Ed.) vol. 1, p. 553, § 4 (j). Since Taft was not its agent, the Machinery Company was not bound by an endorsement which did not truly reflect that agreement.

■■ The failure of Failing to discover the mistake by reading the policy and to act to have it corrected, is not a bar to reformation. Mere negligence not amounting to a breach of positive duty is not a bar to reformation, especially where the other party has not been prejudiced thereby. Columbian Nat. Life Ins. Co. v. Black (C. C. A. 10) 35 F.(2d) 571, 575, 71 A. L. R. 128; Skelton v. Federal Surety Co. (C. C. A. 8) 15 F.(2d) 756, 758; Farwell v. Home Ins. Co. (C. C. A. 5) 136 F. 93, 97, 98; Williams v. North German Ins. Co. (C. C.) 24 F. 625, 626; Pomeroy's Equity Jurisprudence (4th Ed.) § 853. There was no positive duty resting on Failing to read the endorsement and discover the mistake. He had a right to assume that the Insurance Company's agent Taft had written the endorsement in accordance with the antecedent oral agreement. McElroy v. British American Assur. Co. (C. C. A. 9) 94 F. 990; German American Ins. Co. v. Darrin, 80 Kan. 578, 103 P. 87. Failing's failure at the most was a mere inadvertence not amounting to a violation of a positive duty. Skelton v. Federal Surety Co., supra.

■ The endorsement did not accurately express the intent of the antecedent oral agreement. The Machinery Company was entitled to have the endorsement in a form which would express that agreement. However, reformation of the original policy was not necessary. It covered the loss. The Machinery Company did not authorize the endorsement which was attached to the policy, and is therefore not bound thereby.

■ The requirements of an insurance policy with respect to proof of loss may be waived by words or conduct, from which the insured

is reasonably warranted in believing that the insurer does not intend to require a strict compliance therewith. Concordia Ins. Co. v. School Dist. No. 98, 282 U. S. 545, 550, 51 S. Ct. 275, 75 L. Ed. 528; Id. (C. C. A. 10) 40 F.(2d) 379, 383; Twin City Fire Ins. Co. v. Stockmen's Nat. Bank (C. C. A. 9) 261 F. 470, 476; Daniel v. Fireman's Fund Ins. Co. (C. C. A. 5) 46 F.(2d) 784; Niagara Fire Ins. Co. v. Raleigh Hardware Co., Inc., (C. C. A. 4) 62 F.(2d) 705, 707; Cooley's Briefs on Insurance (2d Ed.) Vol. 7, pp. 5948–5950, 5987–5988, 6010.

■ Smith the adjuster was furnished with a copy of the inventory showing the items and value of the property destroyed, and was given access to the books and records of the Machinery Company. He was furnished with substantially all the information a proof of loss would have afforded. He was asked if he wanted any further information and he stated that nothing more was required; that, if he needed anything further, he would get in touch with Failing later. He at no time requested any further or additional information. This, in our opinion, was evidence from which the jury was warranted in finding a waiver of the requirements with respect of proof of loss.

The policy contained the following provision: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

■ Under this provision it was not incumbent upon the Machinery Company to prove that the actual cash value was not greater than the cost of replacement. The actual cash value of the property at the time of the fire was the primary basis for the measure of liability of the insurer. The provision that this liability should in no event exceed what it would cost the insured to replace such property, is a subordinate provision limiting the primary liability of the insurer, inserted in the policy for the benefit of the insurer. The claim under such a subordinate provision that the replacement value was less than the actual cash value is an affirmative defense. It was incumbent upon the Insurance Company to plead and prove such defense, if it desired to rely thereon. Mechanics' Ins. Co. v. C. A. Hoover Dist. Co. (C. C. A. 8) 182 F.

590, 31 L. R. A. (N. S.) 873; Port Blakely Mill Co. v. Hartford Fire Ins. Co., 50 Wash. 657, 97 P. 781; Ætna Ins. Co. v. McLead, 57 Kan. 95, 45 P. 73, 57 Am. St. Rep. 320; Sutherland v. Standard L. & A. Ins. Co., 87 Iowa, 505, 54 N. W. 453.

We have examined the other questions raised by the assignment of errors, and are of the opinion that they are so lacking in substance as not to merit discussion.

The judgment was clearly right, and it is affirmed.