## OHIO CASUALTY INS. CO. v. CALLAWAY et al.

### No. 942.

District Court, W. D. Oklahoma.
July 3, 1942.

Clayton B. Pierce, of Oklahoma City, Okl., for plaintiff.

Arney & Barker, of Clinton, Okl., Edwards & Edwards, of Cordell, Okl., and Tolbert, Tolbert & Gillespie, of Hobart, Okl., for defendants.

VAUGHT, District Judge.

This action was brought by the plaintiff for a declaratory judgment to construe its liability, if any, under a public liability and property damage insurance policy written by it upon an automobile truck used for the retail distribution of butane, owned by the defendant W. L. Callaway. The other defendants are persons who were injured or whose property was damaged by an explosion of the butane on said truck after it had caught on fire.

At the outset the court holds that it has jurisdiction over the parties and subject matter as diversity of citizenship clearly exists and the amount in controversy exceeds $3,000.

Plaintiff denies liability by reason of a "general endorsement" upon the policy, which reads as follows:

"In consideration of the premium at which this policy is written and of the issuance and acceptance of this policy, it is understood and agreed that there shall be no coverage under this policy as respects any loss, claim, or damage, resulting directly or indirectly from fire, combustion, or explosion of any commodity being loaded on, unloaded from, or transported on, any vehicle insured hereunder, or resulting directly or indirectly from the delivery of such commodities, also this policy excludes property damage claims for accidents on customers premises resulting in damage to property, any part of which is owned by, rented by, leased to, or in charge of such customer."

The principal defendant, W. L. Callaway, answered to the effect that the general endorsement aforesaid was placed on the policy without his knowledge or consent, is contrary to the representations made to him by the insurance company and contrary to his agreement with it, and was placed thereon by reason of fraud, neglect, mistake or inadvertence. The other defendants conform their answers, for the most part, to the answer of Callaway. All defendants pray that the policy should be reformed to express the true agreement between the plaintiff and the defendant Callaway.

The evidence is very clear that the insured, Callaway, never saw the insurance policy after it was written, until after the explosion of the butane truck, although it was delivered under his instructions to his agent, the local bank, which held a mortgage upon such truck. The testimony is in conflict as to the representations made to the insured. The insurance agent, who testified that he knew the truck was used for hauling butane gas, stated his only representation to his customer was:

"And I quoted, told Bill he ought to carry some public liability insurance, that he might run into somebody, and I quoted him rates on that."

And further: "We didn't discuss anything about the policy, except I called it liability insurance, and told him what the premium would be on it."

Callaway and his mother both testified that they asked the agent if the policy gave complete coverage and protection. Callaway stated the agent told him he needed liability protection, "if you had an accident or killed anybody. * * * I asked him again if I was fully covered, and he said I absolutely was, except if I run over a chicken; * * *." With reference to this same conference, his mother being present, he testified: "* * * and she wanted to know what I was being insured for, and I heard her ask him if I was covered for any accidents that might happen with the butane truck. He said I was."

According to the record, Mrs. Sarah J. Callaway was helping to finance her foster son, the defendant Callaway, in the butane distribution business. She was present at the bank in Cordell, Oklahoma, when the negotiations for the liability insurance policy here in question were being made. She testified, with relation to the representations made by the insurance agent regarding the butane truck, as follows: "* * * he said he could insure it for every accident and every fire and any harm that would come, and that if anything happened, that Billy wouldn't—W. L. Callaway wouldn't be liable. That was what I was afraid of. I didn't want him to have any liability, as I was helping him."

After the defendant Callaway had agreed to purchase the liability insurance policy for the premium rate quoted, he went to the insurance agent's office and said agent made out and delivered to him a service card, showing that he held a policy with the plaintiff insurance company, instructing him what to do in case of accident, and listing the names and addresses of the insurer's representatives throughout the United States, the nearest of which he was directed to notify in case of accident. He did not wait until the policy was written but left in his butane truck for Hobart, Oklahoma, to go about his business. The insurance agent thereafter prepared and issued the policy with the "general endorsement", here in controversy, attached, and delivered it to the bank to be placed with the bank's note and mortgage, as instructed by the insured. That same afternoon he went to the home of Mrs. Callaway and collected the insurance premium. She testified that while writing

out the check she asked him if it covered "every accident and every fire and every damage," so that W. L. Callaway would not be liable, for she wanted him fully insured. She testified the agent said that insured "was fully covered from all of the accidents and fire, I remember mentioned, and that he wouldn't be liable if anything happened."

This court asked the insurance agent the question:

"Was anything said in the bank there between you and Mr. Callaway as to whether or not this policy would cover any explosion that might result from butane gas?"

To which the witness replied: "No, sir, there was no conversation at all like that."

A digest of the evidence discloses that the above is substantially the testimony as to the meetings of the minds of the parties when this insurance policy was written. There had been no written application for the policy. Since this is an action brought by the insurance company for declaratory judgment to construe the policy and determine its liability thereunder, and since the defendants have prayed for affirmative relief, that is, to have the policy reformed to express the true agreement between the parties, the evidence must be weighed carefully to determine what was the true agreement of the parties.

The insured was a young man just starting in business. He relied upon his friend, the insurance agent, to cover him properly with insurance protection. He and his mother carefully inquired if he were fully insured against anything that might happen in the operation of his butane truck. He was given that assurance. He paid the premium demanded in order to acquire such policy. He felt that he was buying protection and security from one best qualified to sell it. He was lulled into a sense of security by the assurances of the insurance company's agent.

After his truck caught fire and exploded, injuring the person and property of others, he informed them that he was fully insured. Then when the policy was examined, he found an endorsement thereon (about which he had not been apprised until the day of the accident), which nullified all of the protection he had contracted to buy and which the insurance agent told him he was purchasing.

The insurance agent excused himself by saying that he was not authorized to write such a policy without attaching the general endorsement relieving the company in the event of damage resulting from fire, combustion or explosion of any commodities transported on the vehicle. He called attention to the fact that such exclusion endorsement was set out on the rate book, or card, from which premium rates were quoted to the insured. But the testimony is that he did not show the rate book to insured, or call his attention to it. He did not mention to the insured that it would be necessary for him to attach a general endorsement excluding any coverage from fire, combustion or explosion of commodities transported on the truck. And he knew the truck was being used for hauling butane, which he knew was highly combustible, or at least knew was an inflammable fuel gas. In this fraud was perpetrated upon the insured by the agent of the insurance company. Insured purchased one thing—protection in the operation of his butane tank truck, but the insurance company gave him something else—a policy with an endorsement thereon relieving itself of that which he contracted to buy.

The plaintiff offered in evidence a letter written to its agent on September 17, 1941, fifteen days after the policy was issued, advising that it would cancel out the policy except for the embarrassing situation in which he was placed. It advised that under the circumstances it would continue the risk under this policy "until expiration, September 2, 1942," but that he should place the risk elsewhere at that time. Then, "so that there will be no question in the event of a loss as to the exact coverage," the agent was asked in said letter to get the assured to sign and witness his assent to the exclusion endorsement. The insurance agent received such instructions nearly sixty days before the explosion of the butane truck, but the insured was never asked to sign such endorsement until it was sent to him by mail, and received by him about 9:00 A. M. on the very day of the explosion, which occurred, according to the testimony, at about 7 o'clock that evening, November 18, 1941. The insured testified that he refused to sign the endorsement so mailed to him.

█ Under all of the above facts, it is the opinion of this court that the defendants are entitled to have the liability policy reformed to comply with the true agree-

ment as formed by the representations of the insurance company's agent, as accepted by the insured, that is, the protection otherwise afforded after the general exclusion endorsement is eliminated.

■ This position is well supported by the authorities. In DeNoya v. Fidelity Phoenix Insurance Co., 110 Okl. 235, 237 P. 125, the Oklahoma Supreme Court held that where an insurance company agent is authorized to receive applications, pass upon the risk, receive the premium and issue the policy, it is not necessary that a written policy be delivered, but the insurance company may be held liable under a parol agreement. In that case, the court held that it will be presumed that a standard form policy and coverage was contemplated. In the case at bar, the secretary of the state insurance board testified that the form of liability policy filed by the plaintiff in his office did not have the exclusion endorsement attached, and that a copy of such endorsement was not on file in his office. Therefore, unless the insurance agent specifically called the insured's attention to the fact that he was not to receive the full protection usually accorded by such policies, that is, unless the agent made it clear that he was selling a policy specifically limited and reduced in coverage by the exclusion endorsement, the insured was entitled to a standard policy without such limitation therein. See, also, Metropolitan Casualty Ins. Co. v. Heard, 178 Okl. 461, 63 P.2d 720.

■ As above mentioned, the insurance agent testified that he had no authority to write this policy without attaching the exclusion endorsement, but the Oklahoma Supreme Court held in Westchester Fire Ins. Co. v. Federal Nat. Bank, 135 Okl. 47, 273 P. 889, that a policy-writing agent had power to waive conditions in the policy.

■ It appears clearly in this case that the agent was authorized to write the policy here involved and the company is bound by his agreement with the insured, though at variance with the policy as actually issued.

■ The law is well settled in Oklahoma that insurance policies may be reformed and the insurance carrier bound by the true agreement made by its agent. In Phenix Ins. Co. v. Ceaphus, 51 Okl. 89, 151 P. 568, the Oklahoma Court quoted with approval the rule of law given in Williams v. North German Ins. Co., C.C., 24 F. 625, as follows:

"Where a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties because of the fault or negligence of the agent, it may be reformed so as to express the contract as it was intended to be made."

See, also, Commercial Casualty Ins. Co. v. Connellee, 156 Okl. 170, 9 P.2d 952; Commercial Casualty Ins. Co. v. Varner, 160 Okl. 141, 16 P.2d 118; Security Ins. Co. of New Haven, Conn., v. Deal, 175 Okl. 450, 53 P.2d 271.

The rule likewise is well established in this Circuit. Home Ins. Co. of New York v. Sullivan Machinery Co., 10 Cir., 64 F.2d 765, in which certiorari was denied 290 U.S. 633, 54 S.Ct. 51, 78 L.Ed. 551; Hayes v. Travelers Ins. Co., 10 Cir., 93 F.2d 568, 570, 125 A.L.R. 1053. In the latter case the Circuit Court said:

"Where an agreement has been reached by the parties as to the terms of a contract, but either through the mutual mistake of the parties, or through mistake upon the part of one and fraud or inequitable conduct on the part of the other, the written instrument drafted to evidence the contract fails to express the real agreement and intention of the parties, equity may grant reformation."

The evidence is sufficiently clear and satisfactory to indicate an antecedent agreement to protect the insured against any accident that might happen in the operation of the truck and takes this case out of the rule announced by the Circuit Court in Kelly-Dempsey & Co. v. Century Indemnity Co., 10 Cir., 77 F.2d 85.

It is, therefore, the opinion of this court that the defendants are entitled to a judgment reforming the insurance policy involved by striking therefrom the general endorsement limiting the coverage as respects loss resulting from fire, combustion and explosion of commodities being transported on the truck in question.

This opinion may be construed as including findings of fact and conclusions of law. A form of judgment consistent with this opinion should be submitted.