**INTERSTATE INDEMNITY COMPANY,**
a corporation, Plaintiff,

v.

Derril O. SIMPSON, Kearney Simpson, John Joseph Keane, Chester A. Giesy, Julia F. Giesy, Dodo F. Dearing, Edgar J. Dearing, and Lee G. Allen, d/b/a Dearing Allen Motors, Kay F. Allen, Guen Allen, Niecy Allen, Frances Orr, Olive Hart, Defendants.

Civ. A. No. 9028.

United States District Court
D. Oregon.

Oct. 7, 1957.

Poole & Farris, Portland, Or., by Kenneth A. Poole, Portland, Or., for defendants Derril O. Simpson and Kearney Simpson.

Anderson, Franklin, O'Brien & Hanlon, Portland, Or., by Ben Anderson, Portland, Or., for other defendants.

McLAUGHLIN, District Judge.

This is an action for a declaratory judgment brought by Interstate Indemnity Company, a California corporation, hereinafter called Insurer, against Derril O. Simpson, a resident of Oregon, hereinafter called Insured. Joined in the action are Kearney Simpson and various third parties, all residents of Oregon. These third parties have asserted claims against Insured arising from a collision with a truck described in a policy issued by Insurer. By this action it is sought to have the policy declared void or inoperative and Insurer not obligated to defend any action brought by third parties on claims arising from the accident, or if so obligated it be declared that Insured be required to reimburse Insurer for any payment which it may be compelled to make. In addition, Insurer prays to have the policy reformed to read that insurance coverage applied only when hauling logs. The court, having before it a controversy of an amount exceeding $3,000 and parties of diverse citizenship properly alligned in interest, has jurisdiction to give a declaratory judgment.[1]

Insured applied through an authorized agent of Insurer for coverage on a Diamond "T" Truck, with which he was then hauling logs in Douglas County, Oregon. A policy was issued in September, 1955, covering accidents of the truck while "within the United States, its Territories or Possessions, or Canada, or while being transported between ports thereof". As viewed by the court this provision established the territorial boundaries within which the truck might be used but did not define the scope of

Koerner, Young, McColloch & Dezendorf, Portland, Or., by John G. Gearin, Portland, Or., for plaintiff.

[1] Chapter 6, Section 6-601, Oregon Compiled Laws Annotated; State Farm Mutual Automobile Insurance Company v. Hugee, 4 Cir., 1940, 115 F.2d 298, 132 A.L.R. 188; Hale v. Fireman's Fund Insurance Company, Or.1956, 302 P.2d 1010.

its operation, i. e. long haul or short haul. However, this issue has not been put in serious dispute. It seems clear from the evidence that Insured was aware of the fact that the premiums he was paying were those applicable to short haul insurance. This knowledge is implicit in his defense that prior to the date of the accident he inquired regarding obtaining long haul insurance at the higher rate and was informed by Insurer's Agent that his present insurance would allow him to make "occasional and casual" long haul trips to Salt Lake City.

By his own testimony, between August, 1956, and the date of the accident im February, 1957, Insured and his brother Kearney Simpson made nine long haul trips, each trip averaging one week. For purpose of such operation the logging business was abandoned. The truck was used to carry plywood to Salt Lake City and bins were installed to hold grain on the return to Oregon. Such facts indicate clearly that the long haul operations of Insured were other than occasional and casual. On February 15, 1957, Insured's truck driven by Kearney Simpson collided in Portland, Oregon, with vehicles of third parties to the action. It was at the time returning from a long

haul run loaded with grain, but no showing was made at the trial as to who was the owner of the grain. The truck operated under an Oregon Public Commissioner's permit for a private carrier.

The principal difficulty facing the court was introduced by Insurer issuing its policy of coverage to Insured with the mistaken insertion of the word "log" in Item 6 of the insurance contract. The item as it stands reads as follows:

"The purpose for which the automobile is to be used is for business and pleasure except as herein stated: * * * Log".

The foregoing provision is inserted as a defense by Insured, and Insurer here prays to have it reformed to read " * * Log Only".

 Courts will reform insurance policies as they would any other instrument to effect the intent of the parties and make it set forth correctly the contract upon which their minds met.[2] Such corrections are not within the prohibitions of the Parole Evidence Rule.[3] The testimony on trial leaves only one reasonable interpretation open for the court as to Item 6 of this insurance contract. Both Insurer and Insured agree

2. Columbian National Life Insurance Company v. Black, 10 Cir., 1929, 35 F.2d 571, 71 A.L.R. 128; Bennett v. Cosmopolitan Fire Insurance Company, 5 Cir., 1931, 50 F.2d 1017; Ohio Casualty Insurance Company v. Callaway, D.C.Okl.1942, 45 F.Supp. 586, affirmed 134 F.2d 788; Freestone v. Prudential Insurance Company of America, D.C.Iowa 1956, 139 F. Supp. 665; Bird v. Central Manufacturers Mutual Insurance Company, 1942, 168 Or. 1, 120 P.2d 753.

3. 3 Corbin on Contracts, Section 540:
"* * * In some of the cases the words of the writing are shown never to have been consciously chosen by the parties as their expression of the terms on which they have agreed. Thus, the scrivener may have mistaken the words dictated to him or may have transcribed them incorrectly from his notes; an agent or attorney may have accidentally bound up a printed form sheet that he was directed to omit or may have omitted one that he was directed to include. The parties then execute the incorrect pa-

per without observing that their directions have not been carried out. On proof of these facts the writing will be declared 'cancelled' or 'rescinded', and the terms actually agreed upon and satisfactorily proved by expressions extrinsic to the writing will be substituted and enforced. This process is called 'reformation'; and in it the 'parole evidence rule' plays no part. The parties are permitted to contradict the writing by this kind of relevant testimony.

"In the foregoing cases, the expressions of the parties that are offered in evidence must themselves be 'interpreted' by the court; but they are not offered in evidence for the purpose of interpretation of the words in the writing. Those words are being consciously abandoned and others substituted. If, in a case of this kind, one of the parties finds the written instrument to his liking and sues to enforce it, proof of the facts constitutes a perfectly good defense; and such proof should never be excluded by a 'parole evidence rule.' * * * *".

that the policy as written does not reflect their intentions at the time of contracting. This clause as it now stands affords coverage for any operation of the truck except logging. Yet all the evidence adduced as to the policy negotiation is clear that logging was at that time the only business of Insured, and that this operation was the only one discussed by the parties. There was a meeting of minds when both parties agreed to insure a specific truck for a specific purpose, i. e. logging only. Insurer is not to be deprived of the remedy of reformation because it was negligent in failing to observe that the writing did not express the agreement.[4] Nor is it a bar that the mistake was not discovered until after the event insured against had occurred.[5]

 Insured contends that subsequent to the collision Insurer, with knowledge of the use to which the truck was being put, treated the policy as in effect and informed Insured that he could make additional interstate trips under coverage of existing insurance. Taking Insured's testimony in its most favorable light such facts do not have the result of bringing Insured's long haul operations within the coverage of the policy. A waiver, if one did exist here, would not have the result of extending insurance coverage. The doctrine of waiver operates only when the subject matter is within the terms of the con-

tract.[6] The introduction of new coverage, i. e. for long haul, would require additional consideration.

 The truck operating in long haul and carrying a cargo other than logs was not within the insurance coverage as agreed on by Insurer and Insured. However, it was being operated under a permit of the Oregon Public Utilities Commissioner. This permit was issued pursuant to a policy endorsement made by Insurer. The endorsement read for a liability of $1,000 bodily injury limit for each person, $20,000 bodily injury for each accident and $10,000 property damage liability for each accident, which amounts were also the general policy limits.

There was a further provision of the endorsement reading:

"Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions of this policy or of any endorsement thereon by the named insured, shall relieve the company from any liability hereunder * * *"

Such an endorsement was necessary before Insured could obtain a permit to carry goods upon the highways of Oregon and by statute such an endorsement could not be cancelled without fifteen days notice to the Commissioner. Upon such cancellation the authority of Insured to operate under his permit became inoperative.[7]

4. Kontz v. B. P. John Furniture Corp., 1941, 167 Or. 187, 115 P.2d 319.

5. New England Mut. Life Ins. Co. v. Jones, D.C.Ky.1933, 1 F.Supp. 984; Southern Feed Stores v. Great American Indemnity Co., 1936, 182 Ga. 442, 185 S.E. 723.

6. Campbell v. Aetna Casualty & Surety Co., 4 Cir., 1954, 211 F.2d 732; John Hancock Mutual Life Insurance Co. v. Markowitz, 1944, 62 Cal.App.2d 388, 144 P.2d 899; Carew, Shaw & Bernasconi v. General Casualty Co. of America, 1937, 189 Wash. 329, 65 P.2d 689.

7. Oregon Revised Statutes (1953), 767.-205(1) and (2):
"(1) No insurance policy or collect on delivery bond furnished under this chap-

ter may be canceled or otherwise terminated at any time prior to its expiration until the indemnity or surety company or reciprocal insurance exchange which executed the same, has filed with the commissioner a notice of cancelation as provided in such bond or policy. Such cancelation shall be effective not less than 15 days from the date of receipt, and no agreement between the parties thereto shall operate to avoid this restriction upon cancelation.
"(2) If any such insurance policy or collect on delivery bond becomes inoperative, the authority under the permit involved shall cease and be suspended, in so far as it pertains to any affected vehicles, until an insurance policy or collect on delivery bond meeting the require-

Insurer has argued that its endorsement is not to be considered in determining the question of liability since Insured held a permit for private carrier while not actually operating as such at the time of the accident. This argument has no weight. The purpose of the Oregon Motor Carrier Statute is for the protection of the highways and the general public thereupon.[8] Insured operated between March 21, 1955, to February 7, 1957, under a permit for a contract carrier.[9] From the latter date and at the time of the accident Insured possessed a permit for a private carrier.[10] Both these categories of carriers are required to obtain liability insurance of the same prescribed amount.[11] Under both classifications Insured fulfilled this requirement by means of the policy endorsement made by Insurer. A change of operation from contract to private carrier, if unauthorized, would give cause for discriminatory action by the Commissioner.[12] However, such a change did not entail a change of insurance liability and therefore Insurers liability to third parties was uneffected. Such liability can be altered only in the manner prescribed by statute. It follows that any reformation of the policy which affects the rights and defenses of Insurer and Insured in relation to one another cannot affect the rights of third parties which accrued while the policy endorsement was still in effect.

By a condition in the policy of insurance Insurer has retained its right to be reimbursed by Insured for any payment made by Insured because of the endorsement required by the Public Utilities Commissioner which it would not otherwise be liable for under terms of the policy. Such a condition has application here.

It is hereby declared by judgment of this court that Insurer's prayer is denied to the extent that the policy was valid and operative at the date of the accident. Insurer is liable to the extent of the policy endorsement on any judgment obtained by third parties here on their claims against Insured because of the accident.

It is further declared that Item 6 of the insurance policy is reformed to read:

"The purpose for which the automobile is to be used is for business and pleasure except as herein stated: * * * Log Only".

Insured will reimburse Insurer for any payment made because of the endorsement attached for purpose of the Oregon Public Utilities Commission Permit which Insurer would not otherwise be obligated to pay under the terms of the insurance policy as herein reformed.

ments of ORS 767.195 and 767.200 becomes effective and is filed with the commissioner."

8. Oregon Revised Statutes (1953), 767.-020; Greenberg v. Flaherty, 1940, 306 Mass. 95, 27 N.E.2d 683, 129 A.L.R. 846.

9. Oregon Revised Statutes (1953), 767.-010(1). " 'Contract carrier' means any person engaged in the transportation by motor vehicle of persons or property, or both, for compensation, under special and individual agreements, leases or other arrangements, and not included in the term 'common carrier'."

10. Oregon Revised Statutes (1953), 767.015(2). " 'Private Carrier' means any person not included in the term 'common carrier' or 'contract carrier' who transports by motor vehicle property of which he is the owner, lessee or bailee, when such transportation is for the purpose of sale, lease, rent or bailment, or in the furtherance of any commercial enterprise. Ownership of the property transported shall not be accepted as sufficient proof of a private carrier operation if the carrier is in fact engaged in the transportation of property for hire, compensation or remuneration, or if such transportation operations are conducted for profit and not merely as an incident to a commercial enterprise."

11. Oregon Revised Statutes (1953) 767.-195.

12. Oregon Revised Statutes (1953) 767.-190, 767.470.