## GENERAL MOTORS ACCEPTANCE CORPORATION v. MID–WEST CHEVROLET CO.

### No. 1092.

Circuit Court of Appeals, Tenth Circuit.
Dec. 15, 1934.

Bruce McClelland, Jr., of Oklahoma City, Okl. (Anthony J. Russo, of New York City, on the brief), for appellant.

Philip N. Landa, of Tulsa, Okl. (C. B. Stuart, E. J. Doerner, B. A. Hamilton, Hal. Crouch, and Merrill S. Bernard, all of Tulsa, Okl., on the brief), for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and POLLOCK, District Judge.

BRATTON, Circuit Judge.

This is the second appeal in this case. The facts giving rise to the controversy and the issues presented by the pleadings were stated fully on the former appeal. (C. C. A.) 66 F.(2d) 1. They need not be repeated here. The jury on the second trial returned a verdict for plaintiff, and judgment was rendered in conformity with it. This appeal followed. For convenience, the parties will be referred to as they were in the trial court.

Defendant demurred to the evidence at the time plaintiff rested its case, and moved for a directed verdict at the conclusion of all the evidence upon the ground that there was no substantial evidence to support a finding that the transactions were loans of money at usurious interest as alleged. The action of the court in overruling the motion is the first question presented for our consideration. The same question was involved and decided on the previous appeal. After reviewing the record with painstaking care, it was there held that, in the absence of proof showing that the reasonable value of (1) the fire and theft insurance furnished, (2) the protection supplied against losses arising from collision, conversion and confiscation, and (3) the services rendered in connection with the transactions, was an inconsequential part of the differential between the face of the contracts in the aggregate and the total amount defendant paid plaintiff, there was no substantial evidence upon which to predicate a finding that the plan was a scheme through which money was lent at usurious interest in a concealed manner. Substantially the same evidence was submitted on the subsequent trial, except that plaintiff sought to establish the value of the items falling within the three subjects. It tendered evidence that the following charges against the differential were proper in substance and amount: Fire and theft insurance, $30,391.60; dealer's reserve, $20,769.81; rebates, $4,494.86; and services rendered in making collections on the contracts, $3,600. In addition, it showed that the losses which defendant sustained under the indemnity against conversion, collision, and confiscation were $9,913. The deductions thus established amount in the aggregate to $69,169.27. As on the previous trial, defendant tendered proof that the transactions were sales of contracts, and its evidence with respect to the charges made against the differential differed substantially; that is, upward in amount from that of plaintiff.

Viewing the testimony most favorably to plaintiff and accepting its figures as correct, it cannot be said that the conceded charges are such an inconsequential, insignificant, or trivial part of the differential as to indicate a device to collect usurious interest. On the contrary, they are consequential, significant, and substantial in amount.

The only evidence submitted by plaintiff with respect to the value of the indemnity against losses occasioned by conversion, collision, and confiscation was that the losses actually sustained aggregated $9,913. Manifestly that was not the value of the protection. An insurance or indemnity company would give no serious consideration to the suggestion that insurance be furnished for a premium equalling the anticipated or sustained losses. There could be no profit in doing so. On the contrary, it would result in a deficit. It is plain that plaintiff failed to furnish the requisite proof respecting the value of the protection furnished it against conversion, collision, and confiscation. Defendant supplied testimony that insurance of that kind could be purchased at $11 per automobile. That would total $43,109. The witness by whom that fact was established admitted, however, that the kind of insurance he had in mind differed in some respects from the protection actually furnished. The record is therefore utterly barren of evidence establishing the value of the protection relating to those losses.

Plaintiff renews the argument made on the previous appeal that the transactions constituted a system through which money was lent at usurious interest. Certain features of the system are reviewed at length, and many authorities are cited and discussed to sustain that contention. We shall not make an excursion into that field. It would serve no useful purpose to do so. As stated, it was decided with painstaking care and deliberation on the former appeal that, in the absence of evidence showing the reasonable value of the protection furnished and the services rendered was an inconsequential part of the differential, there was no substantial evidence upon which to find that the transactions constituted a scheme of that kind.

It is well settled that all matters decided on appeal become the law of the case to be followed in all subsequent proceedings in both the trial and appellate court. Thompson v. Maxwell Land-Grant & Ry. Co., 168 U. S. 451, 18 S. Ct. 121, 42 L. Ed. 539; Utah Power & Light Co. v. Woody (C. C. A.) 62 F.(2d) 613; Jones v. Box Elder County (C. C. A.) 67 F.(2d) 900; Finley v. United Mine Workers of America (C. C. A.) 300 F. 972; Federal Reserve Bank v. Omaha Nat. Bank (C. C. A.) 45 F.(2d) 511; Northern Pac. Ry. Co. v. Van Dusen Harrington Co. (C. C. A.) 60 F.(2d) 394; American Surety Co. v. Bankers' Savings & Loan Ass'n (C. C. A.) 67 F.(2d) 803. That doctrine applies where the evidence is substantially the same on both trials. It does not have application if the evidence on the subsequent trial presents a materially different situation. Meyer & Chapman State Bank v. First Nat. Bank of Cody (C. C. A.) 291 F. 42; Pennsylvania Mining Co. v. United Mine Workers (C. C. A.) 28 F.(2d) 851; Illinois Power & Light Corp. v. Hurley (C. C. A.) 49 F.(2d) 681; Page v. Arkansas Natural Gas Corp. (C. C. A.) 53 F.(2d) 27. And the introduction of new testimony at the subsequent trial which is merely cumulative does not take a case without the rule. Zurich General Accident & Liability Ins. Co. v. O'Keefe (C. C. A.) 64 F.(2d) 768. Of course, the doctrine is not an iron rule which denies a court the power to correct a manifest error or mistake of a serious nature in a former decision. It is one of sound policy. Litigation would be unduly prolonged if every dissatisfied suitor were permitted to obstinately renew on successive appeals questions previously considered and decided. We are thoroughly satisfied with the soundness of the decision rendered on the former appeal, and we adhere to it.

Since the evidence offered on the subsequent trial failed to establish the reasonable value of the protection against conversion, collision, and confiscation, and showed affirmatively that the conceded charges against the differential were not an inconsequential, insignificant, or trivial part of it, the court should have sustained the motion for a directed verdict in favor of defendant.

The next contention advanced is that, assuming the transactions constituted loans of money, there was no substantial evidence to show that usurious interest was collected. Having reached the conclusion that the evidence failed to establish that they were loans of money as distinguished from sales of contracts, it is unnecessary to consider that question.

The judgment is reversed, and the cause remanded for further proceedings in harmony with this opinion.

PHILLIPS, Circuit Judge.

I concur in the reversal of the judgment for the reasons stated by Judge Bratton, and for the further reason the evidence fairly established that usury was not exacted.

The claim of the plaintiff is summarized in the record as follows:

| | | |
|---|---|---|
| Face of contracts.... | | $1,276,366.82 |
| Amount advanced... | | 1,112,236.86 |
| Total charge........ | | 164,129.96 |
| Insurance ......... | $30,391.60 | |
| Dealers reserve..... | 20,769.81 | |
| Rebates ........... | 4,494.86 | |
| Three C. protection.. | 9,913.00 | |
| Collection service... | 3,600.00 | |
| | | 69,169.27 |
| Interest charged.... | | 94,960.69 |

This plaintiff asserts is 16% per annum.

I have found it impossible to take the gross figures and arrive at the interest charged because there is no way of determining the period during which the money was used, the maturity date of the contracts varying, and an average not being accurate. Therefore, I have taken a typical contract and determined the interest charged on it, as follows:

| | | |
|---|---|---|
| Face of contract.................. | | $540.00 |
| Amount received by plaintiff....... | | 452.00 |
| Deduction ....................... | | 88.00 |
| Less: | | |
| Fire and theft insurance.... | $23.82 | |
| Rate on three C. insurance.. | 11.00 | |
| Dealer's reserve........... | 6.78 | |
| Collection service.......... | 9.10 | |
| A total of....................... | | 50.70 |
| Leaving for interest............. | | 37.30 |

or slightly less than 10% per annum on $486, the amount advanced, plus the insurance charges.

Plaintiff undertook to fix the value of the three C. protection at the actual losses suffered by the defendant. That manifestly is incorrect. No insurer would carry a risk for a premium equal to the actual amount paid out for losses. The figure I have used is the established rate for such insurance, as testified to by an expert called by the defendant.

Clyde T. Thompson, general manager of plaintiff, testified that the value of the collection service for the period of three years was $3,600. He based this on the cost of one collector. This was obviously wrong. The evidence of defendant showed many persons rendered the service, and that the actual cost thereof was $12.22 per contract. I have eliminated from defendant's figures $1.11 for executive office expense, 69 cents for depreciation, and $1.32 for taxes, leaving a cost per contract of $9.10. It is of course absurd to say installment collections could be handled for $1.00 per contract, which is approximately the figure used by the plaintiff.

I therefore conclude the proof failed to establish usury, and that the court should have directed a verdict.