SECURITY INSURANCE CO. OF NEW HAVEN, CONN.. v. DEAL et ux.

No. 24565. Jan. 7. 1936.

Rittenhouse, Webster & Rittenhouse and Mac Q. Williamson, for plaintiff in error.

Blanton, Osborn & Curtis and S. D. Williams, for defendants in error.

CORN, J. This is an appeal from a judgment of the district court of Garvin county, rendered in an action wherein Frank Deal and Ida I. Deal were plaintiffs, and the Security Insurance Company of New Haven, Conn., was defendant. The parties will be referred to hereinafter as they appeared in the trial court.

This action was to reform a certain policy of insurance and to recover judgment on the policy as reformed.

The petition alleges that Ida I. Deal was the owner of lot eight (8), block two hundred seven (207), Wynnewood, Okla., and that on or about May 4, 1931, Frank Deal. the husband of Ida I. Deal, applied to the agent of the defendant for insurance on the building located on said real estate, but that through the mistake and oversight of said agent the policy was issued in the name of Frank Deal instead of Ida I. Deal. It is alleged that on July 12, 1931, the said building was greatly damaged by fire.

A part of said petition is as follows:

"Plaintiffs further show to the court that on the date said policy of insurance above described was written and issued, the property covered by said policy for the period above described was all owned by the plaintiff. Ida I. Deal; that on said date said plaintiff, Ida I. Deal, was the full, legal and equitable owner of all of said property.

and said property stood in the name of said plaintiff, Ida I. Deal, on the records of the office of the county clerk of Garvin county, Okla., and that said plaintiff, Ida I. Deal, had, been the full owner of all said property for many years; that all said facts were well and truly known by said agent of said defendant insurance company, James E. Suggs; that said agent on said date, and for many years prior thereto had full knowledge that the plaintiff, Ida I. Deal, was the owner of said property covered by said insurance policy; that the plaintiff, Ida I. Deal, is the wife of the plaintiff, Frank Deal; that said policy of insurance was issued to the plaintiff, Frank Deal, as agent for his wife, Ida I. Deal, and that on the date said policy was written, to wit, May 4, 1931, the said agent of said defendant insurance company, James E. Suggs, well knew that the plaintiff, Frank Deal, was procuring said insurance as agent for his wife, Ida I. Deal; that said agent had been personally acquainted with the plaintiffs herein for many years, and knew that the said Ida I. Deal had inherited said property covered by said policy from her father, John Carr, and that said agent, James E. Suggs, at said time, and for many years prior thereto had lived next door neighbor to the said plaintiffs herein, and well knew that said insurance was issued on said date for the wife, Ida I. Deal, and not for the use and benefit of the plaintiff, Frank Deal, and that it was the intention of the plaintiffs herein, and said agent, James E. Suggs, to issue said policy to Ida I. Deal, the owner of said property, but that through mistake and oversight on the part of said agent, who wrote said policy, said policy was issued to Frank Deal instead of Ida I. Deal, and that by reason of all said matters and things said policy should be reformed, and the name of Ida I. Deal inserted and substituted in lieu of the name of Frank Deal at all places in said policy where the name of Frank Deal appears."

Thereafter the defendant filed its answer which in part is as follows:

"1. That this defendant denies each and every, all and singular, the allegations and statements set forth and contained in plaintiffs' petition herein except such thereof as may be hereinafter specifically admitted.

"2. Defendant admits that it is a corporation, duly licensed to engage in business within the state of Oklahoma, and was such at all of the times herein referred to.

"3. Defendant further alleges and states that the policy of insurance herein sued upon contains therein, among others, the following valid and binding stipulations, provisions and conditions, to wit:

" 'This policy, unless otherwise provided by agreement indorsed hereon or added hereto shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy; * * * or if the interest of the insured by other than unconditional and sole ownership or if the subject of insurance be a building on ground not owned by the insured in fee simple; * * * or if a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days'."

The issues thus joined, the case was tried to a jury, and after the policy had been reformed by the court, the jury returned its verdict in favor of plaintiff, Ida I. Deal.

The evidence of Frank Deal is substantially as follows: That he informed the agent of the defendant at the time he applied for the insurance that the property belonged to his wife and that she wanted it insured, and his evidence was corroborated by a witness who was with him when such conversation took place.

The witness Frank Deal also testified that James E. Suggs told him after the fire that it was his mistake that the policy was issued in the name of Frank Deal instead of Ida Deal.

Mrs. Ida I. Deal testified that she is the wife of Frank Deal, and the owner of the property known as lot 8, block 207, Wynnewood, and that she had owned it for 15 years; that she inherited it from her father, John E. Carr; that she had known J. E. Suggs all her life, and that prior to the time she moved out in the country they lived by the side of Suggs, "just a fence between them"; that J. E. Suggs knew of the division of the Carr estate, and knew that she was the owner of the property; that she had instructed her husband to keep the property insured, and that she knew the property went without insurance for a while; that when the fire occurred she thought she had a policy of $3 500 written by Suggs in force on the property; that she never saw the $3,500 policy written by Suggs on the property, and she authorized and directed her husband, Frank Deal, to have it written.

James E. Suggs, witness for the defendant, testified that he lives in Wynnewood, and has lived there since September, 1890, and is in the insurance and real estate business; that he was local agent for the Security Fire Insurance Company, and has been for 25 or 30 years; that he remembers

issuing the policy in suit on May 4, 1931; that he wrote it at Mr. Deal's request; that he had carried prior insurance on the same property in the Northwestern for more than a year; that he canceled said policy for nonpayment of premium, but he did not remember when it was canceled; that witness had a conversation with Frank Deal before he wrote the policy in suit—maybe the same day—or maybe a day or two before; that Frank Deal did not say in whose name he wanted the policy written, but he just told him to write a policy or write some insurance; that the former policy had been written in the name of Frank Deal; that the name of the company in which the policy was to be written was not mentioned in the conversation with Frank Deal; that when he issued the policy witness kept it in his possession; that he thought he turned the first policy over to Deal, that was his recollection (referring to the Northwestern policy), but that he had not delivered the second Northwestern policy or the Security policy to Mr. Deal.

The witness Suggs was then asked if Frank Deal told him, when he sought the policy sued upon, that his wife was insisting upon insurance being written upon the property, and the witness answered:

"A. I don't remember just about that part of it. Q. Do you recall anything said by Mr Deal with reference to his wife in that conversation? A. I don't remember him mentioning the name of his wife in that conversation."

On cross-examination James E. Suggs testified:

"Q. You wanted to write a valid policy when you started to write that, didn't you? A. I certainly did."

He further testified that Frank Deal first came to his office and talked about the insurance, and then Ben Norman came up and while Frank was there witness told him he thought the arrangements suggested could be made and that Norman could pay the money:

"Q. And didn't Norman and Deal come up together? A. I think Norman—Norman came up —Q. Do you say they didn't come up together now? A. I don't think so."

Witness further testified that he would not be positive whether they came up together or not.

Witness was further asked if Frank Deal did not say in the presence of Norman, "I have brought Norman up here, let's see if we can make that deal," and he then said, "Sit down," and Frank said, "Now, if this was my property, I wouldn't have it insured because of the depressed conditions; I am not able to pay for it; but my wife is * * * troubling me about it every time I go home, and the first thing she will ask when I go home is if I have had the policy rewritten," or words to that effect, to which he answered, "I don't think so—"

"Q. You wouldn't be positive about that, will you? A. Well— Q. And then he said 'If you and Norman can arrange it, I would like for you to rewrite it'? A. Deal spoke to me first about it. Q. But I am talking about that day they came up there. A. I don't think they came together. Q. You say that conversation didn't occur in the presence of Ben Norman? A. I don't think it did. Q. You wouldn't be positive about that, would you? A. No."

Witness further testified that it was upon Frank Deal's statement and witness' arrangement with Norman and Deal after he had seen them both, that he wrote the policy; that neither Frank Deal nor Mrs. Deal ever saw the policy; that soon after the fire he sent the policy in to the company.

Witness testified that he had a letter from the state agent for the company, after the fire, telling him to cancel the policy; that he did not remember how long after the fire he received this instruction, but it was sometime during the year 1931; that as he remembers it was either in August or September, and that during said interim he had never shown it to either Mr. or Mrs. Frank Deal.

"Q. Now tell this jury positively that you ever delivered to Frank Deal any policy of insurance? A. I am not sure, but I think I delivered one, the first one I wrote."

Witness further testified that he afterwards saw Frank Deal on the street and told him that Ben had made the arrangements with him and he had written the policy; that witness gave Frank Deal to understand that he had prepared the policy; that witness had known this property ever since it was built; that witness knew the property covered by the policy was part of the estate of Mrs. Deal's father, and given to her in the division of the estate, and that he had never heard of her selling it.

Witness was then asked:

"Q. And you wanted to write a policy so as to protect her interest and bind the company at the time you wrote it? A. Yes."

Witness testified further that he never had any understanding with the Deals whereby he was to retain the policies written in his office, nor any understanding with them about keeping any policies for them.

A part of the journal entry is as follows:

"And thereupon the court finds that the policy of insurance herein sued upon should be reformed by striking the name of Frank Deal as the assured therein and substituting the name of the plaintiff, Ida I. Deal, as the assured in said policy; that said issue of reformation is one for the determination of the court, and that the said plaintiff, Ida I. Deal, is entitled to the relief prayed for by her on such issue, to all of which the defendant is allowed an exception.

"And thereupon, the court instructed the jury upon all other issues of fact in said cause and the jury having heard the argument of counsel, thereupon retired to their jury room and thereafter returned into open court their verdict in favor of the plaintiff, Ida I. Deal, and against the defendant, Security Insurance Company, a corporation, in the sum of $1,845.54, together with interest thereon at 6 per cent. per annum from September 12, 1931, which verdict was duly received by the court and ordered filed and entered.

"It is, therefore, adjudged and decreed by the court that the policy of insurance, herein sued upon be reformed and corrected by the substitution of the name of the plaintiff, Ida I. Deal, therein as the assured in the stead of the name of the plaintiff, Frank Deal, to which the defendant is allowed an exception; and

"It is further ordered, adjudged and decreed that the plaintiff, Ida I. Deal, have and recover judgment of and against the defendant, Security Insurance Company, a corporation, in the sum of $1,845.54, together with interest thereon at 6 per cent. per annum from September 12, 1931, and for the costs of this action, for all of which let execution issue."

The defendant submits several propositions under the assignments of error, challenging the correctness of the rulings and instructions of the trial court because of its error in overruling the motion of the defendant for a new trial, and all these propositions relate to alleged lack of proper pleadings, lack of sufficient evidence as to mutuality of mistake, the insufficiency of the evidence to justify reformation, and to the giving of certain instructions with respect to mutual mistake.

In Phenix Ins. Co. v. Ceaphus, 51 Okla. 89, 151 P. 568, it was alleged that Ceaphus sought and procured an insurance policy on a house in the sum of $700, and at the time stated to the issuing agent that he did not own the land on which the house stood, but that it rested in his wife, and was assured by the agent that that would make no difference, and the policy was thereupon written in the name of the husband. The defense was interposed, of course, that the statements in the policy that he was the unconditional owner of the premises had been breached.

The second paragraph of the syllabus is:

"Where a policy of insurance does not represent the intention of the parties thereto, because of the fault or negligence of the agent writing the policy, such policy may be reformed, so as to express the contract as it was intended to be made."

In disposing of the case in the body of the opinion, this court said:

"The court decreed a reformation of the policy of insurance, and this was done in accordance with undenied agreed evidence; hence, did the court err in so decreeing? In the case of Williams v. North German Ins. Co. (C. C.) 24 Fed. 625, Justice Miller announces the rule to be:

" 'Where a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties because of the fault or negligence of the agent, it may be reformed, so as to express the contract as it was intended to be made.'

"There is no question that the agreed evidence in this case shows that insured contracted for insurance upon the house, stating at the time to the agent that he did not own, but his wife did, the land upon which the building was situated; that he had erected the building with the consent of his wife, and showed the soliciting agent the deed to his wife for the land, and thereupon the said agent said:

" 'That did not make any difference; it will be insured after 12 o'clock tomorrow.'

"If the agent fails to do that which was intended, it would be harsh to say that the instrument should not be reformed, and that equity will give no relief. It is clear to us that the right to have said reformation decreed cannot be questioned, and we do not deem it necessary to cite the many authorities that may be cited in support thereof."

In State Mutual Insurance Co. v. Green, 62 Okla. 214, 166 P. 105, this court held that where the record title to the homestead was in the husband, a policy of fire insurance issued in the name of the wife was a

valid and enforceable contract, and that the insurance company, where the facts as to the title had been disclosed to it by the applicant, was estopped from asserting such invalidity or misrepresentation as to the state of the title.

In the opinion it is said:

"When the agent was negotiating with plaintiff's husband for the insurance, he informed the agent of the status of the title and asked the agent if he could have the policy made payable to the plaintiff, saying to the agent (and this testimony is uncontradicted):

"'She has paid part for the lots and bought the furniture in it, and she has paid part of the money; she has paid most of the expenses, and I think she is entitled to the policy. Of course, I own the lots; they are deeded to me. But, I said, she is as much interested as I am.'

"The agent said, 'Why, you can.' And again in the same conversation, regarding having policy made to the plaintiff, the agent said, 'It doesn't make a bit of difference'."

In Gregan v. Northwestern Nat. Ins Co. of Milwaukee, Wis. (Ore.) 163 P. 588, the first paragraph of the syllabus is:

"Where the vendee under an executory contract for the sale of land bargained and paid for a policy of fire insurance which would protect his interest as vendee, but the policy, thoughtlessly, and by oversight of the insurer's authorized agent, was written in a form requiring absolute ownership in the insured, the latter was entitled to have the policy reformed in equity after loss to protect him. though he had not read the policy, and though the form of fire policies is statutory, the mistake being mutual, and fire policies being still subject to reform in equity, at least in the provisions which local agents are authorized to supply and modify."

In that case Gregan purchased a lot and entered into a contract, paid a portion of the consideration, began the construction of a building thereon, and procured a policy of insurance on the same before he procured title to the property; the policy, being in statutory form, contained a provision that it should be void if the interest of the insured should be other than unconditional and sole ownership. Notwithstanding such provision the plaintiff accepted said policy, and thereafter the property was destroyed by fire. The defendant denied liability, and thereupon the plaintiff brought an action to reform said policy and to recover judgment in the amount of the loss. It was shown that Cooper, the issuing agent, knew what the plaintiff's interest in the property was, and that he was a mere vendee under an executory contract of purchase. Cooper admitted having some of the conversations but denied flatly that he learned in these conversations anything of the nature of the title held by the assured in the property. There were some cogent corroborating circumstances of Cooper's denial.

In the opinion the court said:

"The lower court believed them, and we are convinced of the correctness of his conclusion, on the facts.

"1. It appears that after Cooper's attention had been directed to the condition of plaintiff's title he prepared and delivered a policy which by its terms was void 'if the interest of the insured' should 'be other than unconditional and sole ownership.' Cooper wrote and delivered this policy either deliberately or thoughtlessly. He testifies that he was familiar with the conditions of the policy. If under these circumstances he deliberately prepared and delivered to plaintiff a void policy and collected the premium therefor, he perpetrated a fraud on plaintiff. Fraud is never presumed, and there is no testimony in this record which requires us to find that there was fraud in fact.

"The conclusion follows that the policy was written in this form thoughtlessly and by oversight. Plaintiff unquestionably bargained and paid for a policy of insurance which would protect his interest as vendee; Cooper testifies that he intended to give plaintiff a valid policy. The mistake was therefore a mutual one, and plaintiff is entitled to relief in equity. This conclusion is supported by Holden v. Law Union & Rock Ins. Co., 63 Ore. 253. 127 P. 547, and by well-considered authorities from other states. In Ben Franklin Ins. Co. v. Gillett, 54 Md. 212, 218, the court says:

"'The law is well settled that where the general agent of a company is intrusted with the power to make and issue policies, and the insured fully and frankly discloses all facts material to the risk, and the agent in making out the policy through fraud or mistake fails to state such facts, such error or fraud on the part of the agent cannot be relied on by the company in avoidance of the policy, and a court of equity upon application will reform the policy so as to make it express the real contract between the parties'."

The witness Suggs admits that he intended to write a valid policy, that after he had talked to both Frank Deal and Ben Norman, arrangements were made that Norman should pay the premiums for Deal, and a policy was issued; that he did not

deliver it to Frank Deal, but kept the same in his office until after the loss occurred, then he had instructions from the state agent to send it in to the company; and that neither Frank Deal nor Ida I. Deal ever saw said policy of insurance; that he, Suggs, had known this property ever since it was built, knew that it was part of the estate that had previously belonged to Mrs. Deal's father and had been given to her in the division of the property; that he had never heard of her selling it to anyone.

J. E. Suggs further admits that after he talked to Upham he told Deal he thought that the matter of who owned the property would not be raised, but did not say that it positively would not be raised; that he told Deal he would get the adjuster down as soon as he could, and for him not to employ a lawyer until the adjuster came and they had a chance to settle it; that he did not remember the date that he urged them not to get into a lawsuit about it; that he and Deal had a conversation about the defect in this policy after the fire.

So, with these admissions on the part of the agent who wrote the policy in question, and the direct testimony of Frank Deal and Ben Norman to the effect that said agent was informed before said policy was issued that the property sought to be insured belonged to Ida I. Deal, wife of Frank Deal, the evidence was sufficient for the trial court to render judgment reforming said policy so as to express the intention of the parties. After the policy was reformed the cause was submitted to the jury under proper instructions, and its verdict was for the plaintiff.

There are other contentions made by the defendant, but they are without substantial merit.

The judgment of the trial court is affirmed.

McNEILL, C. J., and BUSBY, WELCH, and GIBSON, JJ., concur. RILEY and BAYLESS, JJ., absent. OSBORN, V. C. J., not participating. PHELPS, J., dissents.