**Robert E. GAY and Mary R. Gay, Appellants,**

v.

**HARTFORD UNDERWRITERS INSURANCE COMPANY, successor in interest to New York Underwriters Insurance Company, Appellees.**

No. 82930.

Supreme Court of Oklahoma.

Oct. 3, 1995.

84

R. Thomas Beadles, Oklahoma City, for Appellants.

Kent Fleming, Brently C. Olsson, Paul B. Middleton, Oklahoma City, for Appellee.

KAUGER, Vice Chief Justice.

The dispositive issue is whether this appeal is governed by *Gay I* which held that the evidence introduced at trial demonstrated a mutual mistake warranting contract reformation. We find that it is.[1]

## FACTS

On January 19, 1988, the appellant, Robert E. Gay (Gay/insured) telephoned Hartford Underwriters Insurance Company (Harford/insurer), and requested information regarding insurance coverage for three cars.[2] Hartford sent Gay an application form which listed several types and amounts of coverage available for the cars, and the premium charged for each type and amount.

Gay completed the application on February 13, 1988. He requested bodily injury

---

1. Because of our ruling on the settled-law-of-the-case issue, we do not reach the other issues presented in this appeal.

2. When Gay contacted Hartford in January of 1988, the three cars were insured by Allstate.

liability coverage for the three cars with limits of $100,000 per person/$300,000 per accident (hereinafter $100,000/$300,000). Gay alleged that based on his past experience with insurance coverage and his understanding of Oklahoma law, he believed that the minimum amount of uninsured/underinsured motorist coverage (hereinafter uninsured) available was an amount equal to the liability limits of the policy. Consequently, he accepted Hartford's offer of uninsured motorist coverage by checking a box identified as the "minimum amount available." However, the minimum amount available was only $10,000 per person/$20,000 per accident (hereinafter $10,000/$20,000).[3]

After returning the application to Hartford, Gay received his insurance policy which became effective April 30, 1988. The insurance policy, consistent with Gay's application form, provided liability limits of $100,000/$300,000 and $10,000/$20,000 uninsured motorist coverage. Other than checking to see that all three vehicles were listed on the policy, the insured did not read the policy.

On April 11, 1988, Gay called Hartford to ask about obtaining a separate insurance policy for his motor home. He requested a quotation for the premium charged on the motor home for liability limits of $100,000/$300,000 and uninsured motorist coverage in the same amount.[4] Gay alleges that: 1) during his conversation with Hartford's agent, he learned that his uninsured motorist coverage on the April 30, 1988, insurance policy was only $10,000/$20,000; 2) he told the agent that he had intended to purchase unin-

sured motorist coverage in an amount equal to his liability coverage which was $100,000/$300,000; 3) he requested that the policy be changed; and 4) the agent told him that she would have it changed for him. The agent gave the insured the phone number of another department to call if he decided to add the motor home to his present policy.

After Gay received the quote from Hartford for $100,000/$300,000 limits for liability and uninsured motorist coverage, he called Hartford on April 29, 1988, to purchase insurance coverage for the motor home. Gay asserts that: 1) the Hartford agent informed him that he had only $10,000/$20,000 uninsured motorist coverage on the April 30, 1988, policy, and that he could not secure $100,000/$300,000 uninsured motorist coverage on the motor home because Hartford did not issue a policy with split coverages for multiple vehicles; 2) he told the agent that he wanted uninsured motorist limits of $100,000/$300,000 on all of his vehicles; and 3) the agent told him that she would take care of it and make the change.

Hartford issued the insured an amended policy effective June 1, 1988, which insured the motor home and the three vehicles which were originally covered in the April 30, 1988, policy. Gay did not read the policy, except to check to see if all of the vehicles were listed on it. The liability coverage for this amended policy was $100,000/$300,000; however, the uninsured motorist limits were still only $10,000/$20,000. On July 15, 1988, after Gay was seriously injured in an automobile accident, he discovered that his amended insurance policy with Hartford provided for unin-

Coverage on the cars included liability limits of $25,000 per person and $50,000 per accident, with uninsured motorist coverage in the same amount as the liability coverage.

3. Pursuant to 36 O.S.1981 § 3636, Hartford was required to offer uninsured/underinsured motorist coverage with limits not less than the limits prescribed for bodily injury meeting the requirements of 47 O.S.1981 § 7–204, and not greater than the bodily injury liability limits provided in the policy. The offer of uninsured motorist coverage was required to be by a form approved by the State Board for Property and Casualty Rates. Title 47 O.S.1981 § 7–204 requires limits of not

less than $10,000 for bodily injury to one person, $20,000 for bodily injury to two or more persons in any one accident, and $10,000 for injury to or destruction of property to others in an accident. The current version of § 3636 provides a written statutory form which must be used. The form must be in a writing separate from the insurance application.

4. The motor home was insured with Allstate under a separate insurance policy from the policy which covered Gay's three cars. The Allstate policy provided liability limits of $100,000 per person/$300,000 per accident and uninsured motorist limits in the same amount.

sured motorist limits of $10,000/$20,000.[5]

The insured filed a claim with Hartford seeking uninsured motorist coverage of $100,000/$300,000, but Hartford insisted that Gay's policy provided only $10,000/$20,000 uninsured motorist coverage limits. Thereafter, Gay brought suit, alleging mutual mistake and seeking to reform the insurance policy to provide uninsured motorist coverage limits of $100,000/$300,000.[6] At the close of Gay's evidence, Hartford demurred to the evidence. The trial court granted the demurrer to Hartford, finding that: 1) Gay's evidence of a mutual mistake was not clear and convincing; and 2) the insured was barred from seeking reformation because he neglected to review his final policy.[7] The insured appealed.

The Court of Appeals, Division 4, in an unpublished opinion, reversed and remanded in *Gay I*.[8] It found that: 1) the trial court acted against the clear weight of the evidence; and 2) the evidence was sufficient to demonstrate a mutual mistake warranting reformation of the uninsured motorist limits from $10,000/$20,000 to $100,000/$300,000.[9] Because the appeal was from an order sustaining Hartford's demurrer to the evidence, the Court of Appeals remanded to the trial court to allow Hartford to present evidence. Hartford petitioned for certiorari and it was denied. The decision of the Court of Appeals became final.

In December of 1993, at the close of Hartford's evidence on re-trial, the trial court held in favor of Hartford and against the insured. It found that: 1) Gay's policy provided the amount of uninsured motorist coverage which he requested on his insurance application; and 2) the insured had ample time, prior to the July 15, 1988, accident to contact Hartford, to inform them that he intended to obtain uninsured motorist coverage of $100,000/$300,000, and to pay the premium for higher coverage—but that he did not. Again, the insured appealed. On April 4, 1995, the Court of Appeals, Division I (*Gay II*) affirmed the trial court. We granted certiorari on July 11, 1995.

## THIS APPEAL IS GOVERNED BY THE SETTLED LAW OF *GAY I* WHICH DETERMINED THAT THE EVIDENCE WARRANTED CONTRACT REFORMATION.

The insured argues that the trial court and the Court of Appeals in *Gay II* acted outside the settled-law-of-the-case of *Gay I* holding that the evidence introduced at trial demonstrated a mutual mistake warranting contract reformation. Hartford counters that: 1) the law-of-the-case doctrine does not apply; and 2) the trial court's decision to deny reformation is not against the clear weight of the evidence.

In law actions, the test of a demurrer to the plaintiff's evidence requires the trial court to accept as true all of the plaintiff's evidence and its reasonable inferences,

---

5.  After the accident, Gay, while in the hospital, told his attorney that he had uninsured motorist limits of $100,000/$300,000. However, the attorney obtained a copy of Gay's policy and informed the insured that the policy provided uninsured motorist limits of $10,000/$20,000. Gay told the attorney that was a mistake, and that he had straightened it all out over the phone.

6.  The insured also sued Hartford for bad faith. However, the trial court bifurcated the bad faith and reformation claims. The bad faith claim is not a part of this appeal.

7.  The trial court relied on *National Fire Ins. Co. of Hartford v. McCoy*, 205 Okla. 511, 239 P.2d 428, 430 (Okla.1951) to support its finding that a party who seeks reformation must be free of neglect in making the agreement.

8.  *Gay v. Hartford Underwriters Ins. Co.*, No. 76,-577 (Okla.Ct.App.1992).

9.  The Court of Appeals in *Gay I* also held that: 1) Gay's failure to read his policy was not determinative of his claim for reformation, but could only be afforded minimal weight; and 2) the insured's failure to read the amended policy was not neglect which could bar reformation because an insured may assume, without reading the policy, that it conforms to the agreement with the soliciting agent. It relied on *Warner v. Continental Casualty Co.*, 534 P.2d 695, 699 (Okla.Ct. App.1975) in support of its holding that an insured can assume, without reading his policy, that it conforms to his agreement with the soliciting agent.

and to disregard conflicting evidence favorable to the defendant.[10] However, when a trial court considers a demurrer to the evidence in an equity action, the trial court treats the demurrer as a motion for judgment and weighs all of the evidence presented.[11] An action brought to reform an insurance policy is one in equity.[12] When an equity order sustaining a demurrer to the evidence is appealed, the judgment of the trial court must be affirmed unless it is found to be against the clear weight of the evidence.[13] If an order sustaining defendant's demurrer to plaintiff's evidence is found to be against the clear weight of the evidence, equity affords the defendant an opportunity to present evidence.[14]

In the first trial, the insured presented evidence that he had an agreement with Hartford's agent to amend the original insurance policy to reflect uninsured motorist coverage of $100,000/$300,000, and that the amended policy did not reflect the parties' true intent. Gay testified that: 1) he intended to obtain uninsured motorist coverage in an amount equal to his liability limits; 2) he twice attempted to correct the mistake and increase his insurance coverage to the limits which he thought were contained in his original policy; and 3) Hartford twice agreed to amend the policy to reflect Gay's requests. The insured also presented documents from Hartford's files in support of his testimony that he had contacted Hartford to make the changes, and that Hartford had agreed to make them. The Hartford claim file had a computer record generated document from the insured's April 11 call to Hartford which contained a notation "UM and/or UDM" and under these words were written "BASIC X INCR 0100/0300." Another computer-generated document from Hartford's claim file contained a handwritten notation which read "Insd changed U/M limits on 6–1–88."

Through cross-examination, Hartford elicited testimony which attempted to explain and controvert Gay's evidence in *Gay I*. For example, Hartford elicited testimony from the sales representative who spoke with Gay on April 11, and from a Hartford claim manager which attempted to explain that: 1) a change in an existing insurance policy is done through customer service rather than through the sales representative; 2) the sales representative which Gay spoke with would not have agreed to change the insured's policy because she was not trained to make the changes herself; 3) the procedures which the agent would have gone through had a customer called and requested information regarding insurance coverage would not have allowed them to make such a change. Hartford attempted to explain that the documents in its file did not support Gay's testimony because the word "INCR," meaning increase, always appeared on the computer screen.

After the trial court sustained Hartford's demurrer to the evidence, the Court of Appeals (*Gay I*) found that the trial court had committed error because the evidence demonstrated a mutual mistake warranting reformation of Gay's insurance policy. The *Gay I* opinion also provides that: 1) Gay's original insurance application could only be afforded

10. *Byford v. Town of Asher*, 874 P.2d 45, 47 (Okla.1994); *Blood v. R. & R. Eng'g, Inc.*, 769 P.2d 144, 145 (Okla.1989); *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121, 130 (Okla. 1984).

11. *Bixler v. Lamar Exploration Co.*, 733 P.2d 410, 412 (Okla.1987); *Malnar v. Whitfield*, 708 P.2d 1093, 1095 (Okla.1985); *Snow v. Winn*, 607 P.2d 678, 680–81 (Okla.1980). We note that ordinarily, when considering a demurrer to the evidence in equity, the trial court weighs all of the evidence which is favorable to both the plaintiff and the defendant and determines in whose favor it preponderates. *Snow v. Winn*, supra. However, more than a preponderance of evidence is required to reform a written instrument. *Dennis v. American–First Title & Trust Co.*, 405 P.2d 993, 997 (Okla.1965). Rather, the plaintiff must show

proof of reformation by clear and convincing evidence. *Griffin v. Griffin*, 832 P.2d 810, 813 (Okla.1992). Here, the record clearly reflects that when the trial court considered Hartford's demurrer to the evidence, it applied the clear and convincing standard, rather than a preponderance of the evidence.

12. *Tri–State Casualty Ins. Co. v. LaFon*, 205 Okla. 293, 237 P.2d 124, 126 (Okla.1951).

13. *Carlile v. Carlile*, 830 P.2d 1369, 1371 (Okla. 1992); *Snow v. Winn*, see note 11, supra; *Forshee v. Anderson*, 332 P.2d 688, 689–90 (Okla. 1958).

14. See, *Bixler v. Lamar Exploration Co.*, note 11, supra; *Snow v. Winn*, note 11, supra.

minimal weight because the original policy was later amended; 2) Gay's failure to read the amended policy was not neglect which would bar his claim for reformation because an insured may assume without reading his policy that it conforms to the agreement with the soliciting agent; and 3) the evidence indicated that the amended policy included the change of uninsured motorist coverage in the amount of $100,000/$300,000. On remand, Hartford's evidence consisted of the testimony of two witnesses regarding the general procedures which the agents typically followed to make changes in a policy, and explanations of the handwritten notation on the document in Hartford's file.

We find that neither of these witnesses presented any materially or substantially different testimony from that which was elicited in the first trial. Hartford did not present any materially or substantially new evidence or facts on re-trial which specifically rebutted or disproved Gay's testimony. In *Gay I*, the Court of Appeals found that the insured presented competent evidence which would warrant contract reformation. On remand, the burden shifted to Hartford to show that the insured did not request a change in his policy, and that Hartford did not agree to make a change in the policy. Neither of the two witnesses which Hartford presented had actual knowledge of the communications between Hartford's agents and the insured. The first witness testified regarding the standard procedures followed by Hartford, and the second revealed that he made the handwritten notation when he was reviewing the documents after the accident.

Although the evidence Hartford presented regarding the handwritten notation may be additional evidence from that presented in the first trial, it does not specifically rebut or disprove the insured's testimony or evidence. Hartford did not present any materially or substantially new evidence or facts on re-trial which rebutted Gay's evidence that he had an agreement with Hartford to amend his original policy to reflect uninsured motorist coverage of $100,000/$300,000. The settled-law-of-the-case doctrine bars relitigation of issues settled by an earlier appellate opinion in the case.[15] **The doctrine applies when the facts and issues are materially or substantially the same in both appeals,[16] or where new testimony is merely cumulative.[17]** Therefore, *Gay I* settled and determined, not only all questions actually presented, but all questions existing in the record and involved in the decision by implication.[18]

When an appellate court rules upon an issue, that ruling becomes the law-of-the-case and controls all subsequent proceedings in the action which will not be reversed on appeal.[19] Only when the prior decision is found to be erroneous, and the Court is satisfied that failure to reverse will result in a gross or manifest injustice will the cause be overturned.[20]

The Court of Appeals determined in *Gay I*, that the evidence was sufficient to demonstrate a mutual mistake warranting reformation of Gay's insurance policy.[21] On

15. *Parker v. Elam*, 829 P.2d 677, 681 (Okla. 1992).

16. *Wilson v. Harlow*, 860 P.2d 793, 797–98 (Okla.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994); *Handy v. City of Lawton*, 835 P.2d 870, 873 (Okla.1992); *Pinkerton v. Carter*, 197 Okla. 95, 169 P.2d 192, 193 (Okla.1946); See also *Smith v. Owens*, 397 P.2d 673, 678 (Okla.1963).

17. *General Motors Acceptance Corp. v. Mid–West Chevrolet Co.*, 74 F.2d 386, 388 (10th Cir.1934).

18. *Handy v. City of Lawton*, see note 16, supra; *Jones v. Medlock*, 201 Okla. 109, 202 P.2d 212, 213 (Okla.1948).

19. *Matter of Estate of Eversole*, 885 P.2d 657, 661 (Okla.1994); *Wilson v. Harlow*, see note 16, su-

pra at 797; *Cavett v. Peterson*, 688 P.2d 52, 56 (Okla.1984).

20. *Wilson v. Harlow*, see note 16, supra; *Cavett v. Peterson*, see note 19, supra; *Smith v. Owens*, see note 16, supra; *Severson v. Roberts*, 197 Okla. 121, 168 P.2d 615, 617 (1946).

21. Hartford insists that if any mistake occurred regarding Gay's insurance policy, it was a unilateral mistake. However, the Court of Appeals in *Gay I* determined that there was competent evidence which supported a mutual mistake. We find that the Court of Appeals decision in *Gay I* does not result in such a gross or manifest injustice that reversal is required. Where an insurance policy does not represent the parties' intention because of fault or the negligence of an

remand, the facts and issues presented were materially and substantially the same as those presented in the first trial. The law established in *Gay I* was binding on the trial court and on any subsequent appeals. Although Hartford presented two witnesses on re-trial, no material or substantial facts not presented in *Gay I* were offered on remand.

## CONCLUSION

The settled-law-of-the-case doctrine applies when the facts and issues are materially or substantially the same in both appeals,[22] or where new testimony is merely cumulative.[23] Under the facts presented, the settled-law-of-the-case doctrine is applicable, and it is dispositive of the insured's reformation claim. The insurance contract should be reformed.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT REVERSED.**

ALMA WILSON, C.J., and HODGES, SUMMERS and WATT, JJ., concur.

LAVENDER, SIMMS and HARGRAVE, JJ., dissent.

OPALA, J., disqualified.

agent writing the policy, the policy may be reformed to express the contract which was intended to be made. See, *Security Ins. Co. of New Haven, Conn. v. Deal*, 175 Okla. 450, 53 P.2d 271, 276 (Okla.1936).

22. *Wilson v. Harlow*, see note 16, supra; *Handy v. City of Lawton*, see note 16, supra; *Pinkerton v. Carter*, see note 16, supra; See also, *Smith v. Owens*, note 16, supra.

23. *General Motors Acceptance Corp. v. Mid–West Chevrolet Co.*, see note 17, supra.