2000 OK CIV APP 83

**Robert OLSON, Plaintiff/Appellant,**

v.

**Lenard BRISCOE, Briscoe Oil Company, Don Garms and Garms Oil, Inc., Defendants/Appellees.**

**No. 92,786.**

Court of Civil Appeals of Oklahoma.

June 2, 2000.

As Corrected June 8, 2000.

---

**3.** We express no opinion on whether a stay might have been required if Mother had agreed to such an extension.

Robert Olson, Tulsa, Oklahoma, Pro Se.

Harold Logsdon, Baker, Logsdon & Schulte, Kingfisher, Oklahoma, for Defendants/Appellees.

## OPINION

ADAMS, Judge:

¶ 1 This is the second time this case has been considered on appeal. In the first case, No. 90,518 (*Olson I*), another division of this Court reversed a trial court summary judgment in favor of Defendants and remanded for further proceedings "consistent with [the] opinion." On remand, the trial court denied Plaintiff's request for a jury trial and after consideration of the evidence entered judgment for Defendants. Although we conclude the trial court correctly denied Plaintiff's request for jury trial and denied recovery for fraud, we conclude the trial court erred in granting judgment to Defendants cancelling the oil and gas lease under which Plaintiff claimed an overriding royalty interest and quieting title to a new oil and gas lease in Defendants.

## FACTS

¶ 2 In 1979, Mary Hoffman, the mineral owner, granted an oil and gas lease to Vulcan Energy Corporation covering a 160 acre tract in Kingfisher County, Oklahoma. The lease (Vulcan Lease) had a primary term of one year and was to continue beyond that "as long thereafter as oil or gas, or either of them, is produced from said land by the lessee." The trial court heard undisputed evidence that the primary term of the Vulcan Lease was extended three months beyond the end of the primary term and that, in any event, a well was completed and operated and Hoffman accepted royalties for several years, obviating any question concerning whether the lease survived the primary term. *See Durkee v. Hazan*, 1968 OK 96, 452 P.2d 803. The trial court also heard undisputed evidence that Plaintiff owned an overriding royalty interest in production under the Vulcan Lease and that the working interest in that lease was held by approximately 20 different owners as of November, 1991.

¶ 3 The well ceased production in November of 1989. In 1991, Hoffman, then represented by the same lawyer who represents Defendants here, sued Cimarron Operating Company, and FP, Inc., alleging that they were operating the well and claimed some right, title or interest in the Vulcan Lease (the 1991 case). Hoffman asked the court to cancel the Vulcan Lease, claiming the owners thereof had abandoned the well and that production had ceased. The trial court in this case heard no evidence that any of the owners identified in the land records as owning a working interest in the well were joined as defendants in the 1991 case, and Plaintiff was not a party to the 1991 case. In July of 1991, Hoffman and the defendants in the 1991 case (1991 Defendants) entered into a settlement agreement along with Defendant Garms, in which the 1991 Defendants agreed to "release all of their right, title and interest in and to [the Vulcan Lease]" and transfer operations to Garms. The appropriate forms were filed with the Oklahoma Corporation Commission designating Garms as the operator of the well, and Hoffman dismissed her lawsuit with prejudice in November of 1991. The trial court entered no order canceling the Vulcan Lease in the 1991 lawsuit, and this record contains no evidence of any formal release of the Vulcan Lease executed by the record owners or even the 1991 Defendants.

¶ 4 Garms testified that he took over operations of the well intending to pull the casing and plug the well but later decided to attempt to rework the well to reestablish production. After being unsuccessful in doing so, Garms testified he contacted Briscoe con-

cerning a recommendation of a plugging contractor. When Briscoe offered to take over the well and attempt to reestablish production if Garms could obtain a new lease from Hoffman, Garms did so. Briscoe assumed operations, and established production from the same borehole beginning no later than July of 1993 and continued to produce the well up until the time of trial. Defendants conceded that if Plaintiff's overriding royalty interest was still valid, the amount of money he claimed was due under that override was correct.

## COURSE OF PROCEEDINGS AND *OLSON I*

¶ 5 In this action, Plaintiff sought to recover the value of the oil and gas produced by Briscoe which was attributable to his override and, apparently, damages for fraud. Briscoe apparently counter-claimed for quiet title and a cancellation of the Vulcan Lease.[1] The trial court granted Defendants summary judgment on at least one of two theories advanced by them. As discussed in *Olson I*, Defendants argued that the Vulcan Lease terminated and operations did not commence within the primary term, relying upon evidence that drilling started after the end of the primary term. *Olson I* held summary judgment on that theory was inappropriate because the record revealed questions of fact concerning whether operations to drill commenced before that date and whether any timely commencement questions were cured by the mineral owners' subsequent acquiescence in the existence of the lease and acceptance of royalties.

¶ 6 *Olson I* also addressed Defendants' argument that the Vulcan Lease had terminated by ceasing to produce in paying quantities. The *Olson I* Court first noted that in Oklahoma an oil and gas lease which contains a "thereafter" form of the habendum clause which has been extended by production beyond the primary term does not automatically terminate upon cessation of production. According to *Olson I*, the lease terminates only when the grantor has successfully

brought an action to cause forfeiture of the lease.

¶ 7 *Olson I* also considered Defendants' argument that Hoffman's 1991 lawsuit was, in effect, a cancellation lawsuit. Concluding that the record contained inferences that the 1991 Defendants were not the lessees under the Vulcan Lease, *Olson I* stated:

> If the [1991 Defendants] were not the successors in interest of *all* the working interest owners in the [Vulcan Lease], then the settlement of the action did not cause forfeiture of the lease and Olson retains his rights under the assignment to him of an overriding royalty interest in the lease *until* it is canceled *by an action brought against the parties to that lease or their successors.* (Emphasis added).

¶ 8 Upon remand, Plaintiff requested a jury trial. The trial court denied that request, ruling that Plaintiff could not recover on fraud and that Defendants' agreement with the amount of money to which Plaintiff claimed entitlement if his overriding royalty was still valid reduced this case to, primarily, an equitable action to determine whether the Vulcan Lease was still valid or should be cancelled. Despite Plaintiff's objections that the trial court could not now cancel the Vulcan Lease because production had been reestablished from the leased tract and because his interest could not be "severed" from the interest of others who owned an interest in the Vulcan Lease and were not parties to this case, the trial court did so and granted judgment to Defendants.

## ANALYSIS

■ ¶ 9 Olson claims the trial court erred because it did not allow him to try his fraud theory of recovery to a jury. At the outset, the trial court expressed the opinion that based upon the evidentiary material submitted during the summary judgment process, Olson could not recover on a fraud theory. Because Defendants had admitted the amount of Olson's recovery if their quiet title action was unsuccessful, the actual dam-

---

1. We say "apparently" because the record does not contain the pleadings in this case. However, the relative theories and requests for relief by the parties were identified by the trial court during the course of the trial.

ages, if any, suffered by Olson were not an issue. If Olson could not recover for fraud, the equitable issues predominated and no jury trial was required. *See Butcher v. McGinn*, 1985 OK 58, 706 P.2d 878. Therefore our analysis of this alleged error must focus on whether the trial court, in effect, properly granted Defendants summary judgment on Olson's fraud theory of recovery.

¶ 10 In order to recover on a fraud theory, Olson was required to demonstrate: (1) a material false representation, (2) made by Defendants with knowledge of its falsity, or recklessly made without knowledge of its truth, and as a positive assertion, (3) with the intention that it be relied upon by another, and (4) reliance thereon by Olson to his injury. Each of these elements must be proven with a reasonable degree of certainty. *Whitson v. Oklahoma Farmers Union Mutual Insurance Company*, 1995 OK 4, 889 P.2d 285. The evidentiary material furnished to the trial court and the evidence admitted at trial established that Olson claimed no misrepresentation by Defendants which caused him to change his position with regard to the lease.[2] The trial court correctly concluded Olson was not entitled to recover on a fraud theory, and therefore properly denied Olson's request for jury trial.

¶ 11 Our analysis of the quiet title judgment leads to a different result. As noted in *Gay v. Hartford Underwriters Insurance Company*, 1995 OK 97, ¶ 18, 904 P.2d 83, 88, "[w]hen an appellate court rules upon an issue, that ruling becomes the law-of-the-case and controls all subsequent proceedings in the action which will not be reversed on appeal." *Olson I* determined that Olson's overriding royalty interest was not affected by the 1991 case unless "all" of the working interest owners were parties to the 1991 case. The record contains undisputed evidence that the 1991 Defendants did not own all the working interest in the Vulcan Lease. Accordingly, under the law of the case established in *Olson I*, Olson had a right to a portion of the production from the land covered by the Vulcan Lease "until [the Vulcan Lease] is canceled by an action brought against the parties to that lease or their successors." Even if the trial court's order purporting to cancel the Vulcan Lease as to Olson's interest only is valid, Olson still is entitled to the proceeds attributable to his override until the date that order was entered.

¶ 12 Similarly, the trial court's order cancelling the Vulcan Lease as to Olson's interest only violates the "law of the case" doctrine. *Olson I* held that the 1991 case was ineffective to terminate the Vulcan Lease unless *all* of the working interest owners were parties, and further held that, in the event they were not, Olson's interest could be terminated only an action brought by "the parties to [the Vulcan Lease] or their successors." "[T]he parties" to the Vulcan Lease were not defendants in this case, and the trial court could not act to cancel the Vulcan Lease in their absence.

## CONCLUSION

¶ 13 The trial court correctly denied Olson a jury trial and any recovery on the ground of fraud, and that portion of its order is affirmed. The remaining portions of the trial court order which denied Olson recovery for unpaid overriding royalty, cancelled the Vulcan Lease as to Olson's interest, and quieted title in Defendants against Olson's claim of interest are all inconsistent with the law of the case established in *Olson I*, and the remaining portions of the trial court's order are reversed. The case is remanded for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

¶ 14 HANSEN, V.C.J., and JOPLIN, J., concur.

---

**2.** The only "misrepresentation" claimed by Olson was his contention that one of the Defendants had incorrectly identified the date on which production was reestablished. However, this alleged "misrepresentation" occurred in an answer to an interrogatory made after this action was filed and Olson made no change in his position based on that answer.